■ KENNETH RAMCHARAN et al., Appellants, v JOSEPH ANGELO et al., Respondents.—In a negligence action to recover damages for personal injuries, etc., plaintiffs appeal from an order of the Supreme Court, Dutchess County, dated January 16, 1978, which denied their motion for summary judgment as to the issue of liability. Order affirmed, with $50 costs and

disbursements. On August 15, 1976, at approximately 4:30 A.M., defendant Angelo, driving a car owned by defendant Friendly Pontiac Mazda, Inc., came around the "horse-shoe" or "hair-pin" shaped approach to the Mid-Hudson Bridge and hit the rear of plaintiffs' car, which was stopped at a toll booth at the entrance to the bridge. Plaintiffs' car was the third in line at the single lane which was open at the toll booths at that hour, and their car, after being hit, was propelled forward into the second car in line which, in turn, came into contact with the first car. At the time of the accident the weather was clear. After conducting an examination before trial of defendant Angelo in July, 1977, plaintiffs moved for summary judgment. In support of the motion they argued that the accident occurred solely because of Angelo's negligent driving and, because their car was stationary when it was hit in the rear, there was, as a matter of law, no possible contributory negligence on their part. The factual context in which the accident arose and some statements made by Angelo at the examination before trial tend to support their argument. Angelo, who had spent the evening at a discotheque, stated that plaintiffs' vehicle had been visible for 300 feet, yet he estimated that when his car made impact he was still traveling at 25 to 35 miles per hour. His car was in good condition and repair, with good brakes and good tires. He did not sound his horn or "slam on" his brakes prior to the impact, which was of a sufficient magnitude to leave him dazed. We hold, however, that Angelo's testimony and the circumstances of the accident were sufficiently equivocal and ambiguous so as to preclude a court from concluding that no factual issues concerning Angelo's negligence and plaintiffs' freedom from contributory negligence exist. Although at one point Angelo testified that plaintiffs' car was visible for 300 feet, at another point he stated that there was only 60 feet from the end of the "hair-pin" turn to the toll booth. Plaintiffs' car was the third in line, and this backup reduced the distance between the end of the sharply curving road and the toll booth, thus giving Angelo less time to react. At 4:30 A.M. it was very dark and this limited Angelo's visibility. Angelo was proceeding at 35 miles per hour as he left the curve and there is no claim in the record that this was an excessive speed. He then down shifted and applied light pressure to the brake. His foot was on the brake when the accident occurred. He also claimed that he did not see any light from plaintiffs' car. Furthermore, he stated that prior to the impact he was momentarily distracted because a car going in the opposite direction beeped its horn. The impact was only moderate and, after the accident, plaintiff Peterkin emerged from his car and stated that nobody in the car had been hurt. Finally, Angelo had never pleaded guilty to any traffic violation as a result of the accident. Before a determination concerning liability can be made here, certain questions must be answered, and this can only occur after a trial. How far a distance was there from the point that Angelo saw plaintiffs' car to the point of impact? Did plaintiffs have their lights on? How severe was the impact? Would the sudden sounding of a horn from a car traveling in the opposite direction, under the facts and circumstances here present, sufficiently distract the attention of a reasonably prudent driver so as to make the collision nonactionable? What was the proximate cause of the accident? Was it Angelo's rate of speed or his failure to promptly and properly brake his vehicle? Indeed, was the momentary distraction of the beeping horn its proximate cause? Did Angelo's conduct under these circumstances conform to the standards required by law? These and other questions raise factual issues which must be resolved before the question of liability is determined. *Andre v Pomeroy* (35 NY2d 361) is distinguishable. In *Andre,* impact occurred during daylight hours, in heavy

traffic, when the driver voluntarily surrendered her view of the road to look for a compact in her purse. In this case the driving conditions were different and Angelo stated that he lost sight of the car in front of him only because he reacted when another car sounded its horn. Even the majority opinion of the sharply divided *Andre* court noted (p 364) that summary judgment "is considered a drastic remedy which should only be employed when there is no doubt as to the absence of triable issues *(Millerton Agway Coop. v. Briarcliff Farms,* 17 N Y 2d 57)." The majority in *Andre* then cited with approval paragraph 3212.03 of Weinstein-Korn-Miller (NY Civ Prac, vol 4, p 32-142.18), which states that summary judgment is proper "only in [those negligence] cases in which there is no conflict at all in the evidence, the defendant's conduct fell far below any permissible standard of due care, and the plaintiff's conduct either was not really involved (such as with a passenger) or was clearly of exemplary prudence in the circumstances." This is simply not such a case. In concluding, it is important to note that we are in no way expressing any view as to the merits of the action. We are only saying that under these circumstances defendants are entitled to their day in court so that the factual issues raised may be resolved. Titone, Hawkins and O'Connor, JJ., concur.

Mollen, P. J., and Hopkins, J., dissent and vote to reverse the order and grant plaintiffs' motion, with the following memorandum: We find that there is no basis upon which the plaintiffs could be held to have been contributorily negligent, that the record affirmatively establishes that no factual issues exist with regard to the defendant Angelo's actions and that liability is clearly and unequivocally indicated. Consequently, we conclude that a trial is not required to resolve the issue of liability. On August 18, 1976, three days after the accident, the defendant Angelo signed a Department of Motor Vehicles' accident report in which he described the manner in which the accident occurred: "Car Nos. 2, 3, 4, stopped at toll booth on bridge. *No. 1 could not stop,* hit 2 in rear—2 hit 3—3 hit 4." (Emphasis supplied.) During the course of his examination before trial, Angelo first stated that there was a distance of "20 yards maybe" from the point where he came out of the "hair-pin" turn to the toll booth. Angelo then added that he did not know the distance. Subsequent to that answer he stated that when he was 300 feet from the toll booth he saw the plaintiffs' vehicle and also some other vehicles. Angelo testified that immediately prior to the collision his vehicle was proceeding at approximately 25 to 35 miles per hour. Angelo also testified that he didn't remember sounding his horn before the accident; that he did not slam on his brakes prior to the impact; and that immediately prior to the collision he was applying "A slight degree of pressure" to the brakes. Submitted in opposition to plaintiffs' motion for summary judgment was an affirmation from defendants' counsel, to which was annexed a copy of Angelo's examination before trial. Counsel for the defendants requested that the court study the page of the examination wherein Angelo indicated "his attention was distracted seconds before the impact by a horn beeping from a vehicle which was proceeding in the opposite direction." On the cited page of the examination before trial, Angelo was asked the following questions and gave the following answers: "Q From the time that you put your car in second, and put your foot on the brake [approximately 300 feet from the toll booth] until the time the contact occurred between the cars did you have your attention on the toll booth in front of you the whole time? A Not all the time. Q Where else was your attention directed? A There was a car going by the other way, going towards the Kingston area. The horn beeped and I looked over. Q Aside from that? A

No, aside from that." A reading of the above testimony discloses that, except for a momentary glance in the other direction, Angelo had his attention focused on the toll booth in front of him. The record does not support the statement contained in the majority decision that "Angelo stated that he lost sight of the car in front of him only because he reacted when another car sounded its horn." In *Andre v Pomeroy* (35 NY2d 361, 364-365), Judge Wachtler, writing for the majority, stated: "But when there is no genuine issue to be resolved at trial, the case should be summarily decided, and an unfounded reluctance to employ the remedy will only serve to swell the Trial Calendar and thus deny to other litigants the right to have their claims promptly adjudicated. * * * Thus as a practical matter summary judgment continues to be a rare event in negligence cases. But this does not mean that the court is obliged, on policy grounds, to ferret out speculative issues 'to get the case to the jury,' where the trial may disclose something the pretrial proceedings have not. It simply means, as one learned treatise observes, that when the suit is founded on a claim of negligence, the plaintiff will generally be entitled to summary judgment 'only in cases in which there is no conflict at all in the evidence, the defendant's conduct fell far below any permissible standard of due care, and the plaintiff's conduct either was not really involved (such as with a passenger) or was clearly of exemplary prudence in the circumstances.' (4 Weinstein-Korn-Miller, N. Y. Civ. Prac., par. 3212.03)". Plaintiff Peterkin, in his affidavit submitted in support of the motion for summary judgment, stated that at the time of the accident he was stopped behind two other vehicles which were also stopped to pay a toll at the Mid-Hudson Bridge and that he had both his headlights and taillights on. The said plaintiff further deposed that while he was waiting to move forward to pay the toll, his car was struck in the rear by a vehicle operated by the defendant Angelo. Notwithstanding the majority's conclusion to the contrary, defendant Angelo's testimony at the examination before trial does not contradict the afore-mentioned statements by Peterkin. Angelo did not testify that he did not see any lights on plaintiffs' vehicle, but rather that he did not *remember* seeing any lights on their vehicle or on the two other vehicles that were stopped in front of the toll booth. We do not believe that the court should strain to find issues of fact where they are not genuinely present. Plaintiffs' motion for summary judgment was well founded and, in our judgment, should have been granted (see *Andre v Pomeroy, supra; Opalek v Oshrain,* 33 AD2d 521).