OPINION OF THE COURT
Edward S. Conway, J.
Plaintiff moves seeking an order pursuant to CPLR 3212 *278 granting partial summary judgment determining liability in favor of plaintiff, and against the defendants herein, on the ground that there is no issue of fact, and also granting "an immediate trial” on the issue of damages pursuant to CPLR 3212 (c) and/or a trial preference to determine damages pursuant to CPLR 3403 (a) (5) on the grounds that there is an action for medical malpractice.
Defendants Lawrence Parsley, Jr., M.D. and Samaritan Hospital of Troy, New York oppose the motion.
This action arises out of an "elective” sterilization procedure performed on the plaintiff by the defendant Parsley at the premises of the defendant Samaritan Hospital on March 11, 1990.
The plaintiff was provided prenatal care by Dr. Parsley’s office starting in August 1989. Records reveal 12 prenatal visits. The prenatal records confirm the absence of any discussion of possible sterilization at any time prior to the time the plaintiff went into labor and was hospitalized on March 10, 1990.
At 10:30 a.m. on March 10, 1990, plaintiff had spontaneous rupture of membranes and was admitted to Samaritan Hospital labor floor at 12:45 p.m. At 12:15 a.m. on March 11, 1990 the plaintiff was medicated with nubain 15 milligrams and phenergan 25 milligrams for pain. The pain continued and at 3:50 a.m. on March 11, 1990 she again required sedation and was given nubain 10 milligrams intramuscularly.
At 4:40 a.m. the patient advised that she no longer wished to attempt a vaginal delivery.
At 5:10 a.m. plaintiff was examined by Dr. Parsley and at 5:15 a.m. Dr. Parsley wrote an order to insert foley catheter and prepare for caesarean section. Dr. Parsley’s note on the progress sheet stated that the "patient refuses to continue trial of labor, demands operative delivery” and "patient also requests elective sterilization.” Consent forms for caesarean section and bilateral tubal ligation were signed by patient and she was taken to the operating room.
A caesarean section was performed by Dr. Parsley under spinal anesthetic resulting in the delivery of a boy at 6:04 a.m. and followed by a Pomeroy bilateral tubal ligation.
Federal and New York State Health Department regulations specify that absent a premature delivery or emergency abdominal surgery (both of which require at least a 72-hour waiting period prior to elective sterilization surgery) any *279 consent to an elective sterilization by Medicaid patients must be given at least 30 but no more than 180 days before the procedure is performed. (42 CFR 50.203 [c], [d]; 18 NYCRR 505.13 [e] [1] [i], [v].)
Moreover, informed consent may not be obtained while the patient to be sterilized is in labor or childbirth or under the influence of substances that affect the patient’s state of awareness. (42 CFR 50.204 [e] [1], [3]; 18 NYCRR 505.13 [e] [2] [ii] [a], [c].)
The defendant hospital’s admitting policy/procedure No. 11 entitled "Consent for Sterilization” provides, in relevant part, as follows:
"C. No preoperative anesthesia nor other medication shall be administered to the patient and no elective surgical procedure shall take place without the completion of the proper consent form by the patient or representative * * *
"F. For Medicaid and other Federally Assisted Program patients:
"4. There have been at least 30 days passed between the patient’s signing of the consent form and the date the sterilization is performed, except in cases of, (a) premature delivery, (b) emergency abdominal surgery, where there must be at least a 72 hour wait after signing the consent form and before surgery can take place.
"5. Consent cannot be obtained while the patient is in the Hospital for childbirth or abortion, or while under the influence of alcohol or other substances that affect the patient’s state of awareness”.
Summary judgment is available to the plaintiff in a negligence action where there are no disputed facts or where under no interpretation of any disputed facts can the defendant’s conduct be determined not to be negligent and the proximate cause of the plaintiff’s injuries. (See, e.g., Andre v Pomeroy, 35 NY2d 361 [1974].)
In support of her motion, the plaintiff has submitted a letter received by her attorney on March 3, 1993 from the County of Albany Department of Social Services verifying that the plaintiff had Medicaid coverage from January 1, 1990 through March 31, 1990. Said letter was accompanied by a Medicaid coverage history printout which indicates that from November 1, 1989 through May 31, 1990 the plaintiff had full Medicaid coverage. Additionally, the billing records from defendant Parsley’s office reveal that a urinalysis test was conducted for *280 the plaintiff by said office on November 1, 1989 and Medicaid paid defendant Parsley’s office for said services on March 8, 1990. Finally, Samaritan Hospital’s admission sheet relating to the plaintiff herein reflects that she was admitted on March 10, 1990 at 12:43 p.m. for delivery and indicates "03/9 MMIS.MEMCAID, BW54774M, EXP 03-90*01*0*0*.”
The court is convinced that the plaintiff was eligible for Medicaid and, in fact, entitled to full Medicaid coverage from, at the latest, November 1, 1989 (approximately four months and 11 days prior to the event at issue herein) until at least May 31, 1990 (approximately two months and 20 days after the event at issue herein). The plaintiff was, therefore, entitled to the protection afforded by the Federal, State and hospital regulations noted above.
In support of the defendant hospital’s opposition to the plaintiff’s motion, Barbara Powley, R.N., has submitted an affidavit which states, in relevant part, that:
"2. I was working on March 10, 1990 on the Labor and Delivery floor at Samaritan Hospital. During the course of my duties I assisted in caring for Patricia Hare.
"3. During this time I witnessed Ms. Hare sign a number of different consent forms, including a consent for sterilization. During this time, her male companion, who I was told was the father of her child, was also present.
"4. Both before and at the time that Ms. Hare signed the consent forms she appeared, in my nursing judgment, awake and lucid. She appeared to fully understand the fact that she was consenting to a sterilization procedure and in fact that she desired to have the same performed.
"5. I witnessed the patient’s signature on the consent form. I would not have allowed her to sign the consent form nor would I have signed the consent form as a witness if, in my nursing judgment, I believed that Ms. Hare did not understand what she was signing.”
Barbara Powley, R.N., confirms that the defendant hospital made its own independent determination as to whether or not a consent could properly be obtained from the plaintiff for an elective sterilization under the circumstances that the plaintiff Patricia Hare found herself in at approximately 5:15 a.m. on March 11, 1990.
Assuming, arguendo, that the plaintiff was not a Medicaid patient during the relevant period and was, therefore, not covered by the above-noted Federal, State and hospital regula *281 tians, the court is of the opinion that as a matter of law the defendants deviated from accepted standards of medical care by accepting the plaintiffs "consent” to perform an elective sterilization under the factual circumstances of this case. That is, under no interpretation of any disputed facts can the defendants’ conduct be determined not to be negligent and the proximate cause of the plaintiffs injury.
Accordingly, the plaintiffs motion seeking an order pursuant to CPLR 3212 granting her partial summary judgment determining liability in her favor, and against the defendants herein, on the ground that there is no issue of fact, and also granting a trial preference to determine damages pursuant to CPLR 3403 (a) (5) is, in all respects, granted.